## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AZANIAH BLANKUMSEE, # 326-698        *
                                             *

Plaintiff,        *
                                             *

v.        *        Civil Action No. PWG-15-837
                                             *

JON P. GALLEY, Regional Executive        *
  Director (North),        *
RICHARD RODERICK, Case Mgmt.        *
  Manager-Acting Asst. Warden,        *
LT. HARBAUGH, Gang Intelligence Unit        *
  Officer,        *
                                             *

Defendants.        *
                                           ***

## <u>MEMORANDUM OPINION</u>

Pending is Azaniah Blankumsee's self-represented, verified complaint and verified supplement filed pursuant to 42 U.S.C. § 1983, while Blankumsee was housed at North Branch Correctional Institution (NBCI) as a maximum security inmate.[1]  Compl., ECF No. 1; Pl.'s Supp., ECF No. 7.  Blankumsee claims he was denied his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Maryland law when Defendants wrongfully labeled him a member of a prison gang or security threat group (STG), a designation that, in his view, subjected him to discrimination and placed him in danger. Compl. & Supp 2.  Defendants, former Regional Executive Director Jon Galley, former Acting Assistant Warden Richard Roderick of NBCI,[2] and Lieutenant Jeffery Harbaugh, who are sued in their official and individual capacities, have filed a Motion to Dismiss or, in the Alternative for

---

[1] On June 26, 2015, Blankumsee was transferred to WCI, where he is presently classified as a medium security inmate. Tennille Winters Decl., ECF No. 21-1.

[2] *See* https://www.dpscs.state.md.us/locations/nbci.shtml. Jeffrey Nines is presently assistant warden at NBCI.

Summary Judgment, as well as a memorandum in support and a supplement. ECF Nos. 13, 13-1, 21. Blankumsee filed an opposition with exhibits to Defendants' dispositive motion. ECF Nos. 18, 18-1 – 18-5.  After considering the pleadings, exhibits, and applicable law, I find a hearing unnecessary to resolve the issues. *See* Loc. R. 105.6 (D. Md. 2014).  For reasons stated below, the motion will be granted.[3]

## BACKGROUND

### Plaintiff's Claims

In his verified complaint and the declaration he attached to it, Blankumsee denies that he ever was a member of a prison gang or STG. Compl. 3; Blankumsee Decl., ECF No. 1-9. Blankumsee also filed the declaration of fellow inmate Aaron Watkins, who maintains that Blankumsee was "never a gang member or affiliated with any gangs." ECF No. 18-1. Watkins' declaration contains no facts to support his assertion.

Blankumsee attempted to have his STG designation removed but was told that "evidence was found to support [his] current validation as being part of a security threat group." Req. for Admin. Remedy, ECF No. 1-6; *see* Supp. Resp., ECF No. 18-2.  He complains that he cannot review or challenge the evidence. Compl. 5; Blankumsee Decl.; *see* Supp. Resp. Blankumsee claims that STG designation has caused him to be denied prison jobs, prison programming, the chance to earn diminution credits, and the opportunity to lower his security classification status.[4]

---

[3] As for Blankumsee's claims under Maryland constitutional law, *see* Compl. 5, Blankumsee has filed a claim with the Maryland Treasurer's Office, which suspended and administratively closed the matter until he files a complaint with the Inmate Grievance Office. ECF No. 13-8. Because some of Plaintiff's federal claims will be dismissed, and summary judgment will be entered in favor of Defendants on the remaining federal claims in this case, supplemental jurisdiction is declined over the state claims. *See* 28 U.S.C. § 1367(c)(3).

[4] Blankumsee has presented similar or related claims concerning his security classification and conditions of confinement in prior cases. *See Blankumsee v. Dep't of Corr., et al,* No. PJM-13-1751 (D. Md. 2013) (denying and dismissing Blankumsee's claim of improper classification as not cognizable); *Blankumsee v. Dep't of Corr., et al.,* No. PWG-13-2507 (D. Md. 2013) (denying classification claim because there is no protected right to a particular security classification, and denying the unconditional conditions of confinement claim).

Compl. 3. He states that labeling him a member of a STG affects the duration of his sentence, since he cannot earn good conduct credits at the same rate as other inmates. According to Blankumsee, "job participation[] is rewarded with [diminution] credits" that "are then used to shorten a prisoner's sentence, and ... denying Plaintiff job participation[] deprives him of the right to earn credits, which prolongs his confinement, and time in prison." *Id.* at 6. He claims he should be assigned to a lower security status. *Id.* Blankumsee also claims that the STG affiliation label places him in immediate danger because of "the substantial violent nature of these gang members" and his placement in housing that identifies him as a gang member to members of other gangs. Pl.'s Supp. 2–3; Compl. 3. He avers that the "whole ordeal" has adversely affected his mental, psychological, and physical well-being. Compl. 8. In his Supplement, however, Blankumsee states he is "not asserting a claim for mental, physical, or emotional injury." Pl.'s Supp. 1.

As relief, he requests a declaration that Defendants' conduct violated his constitutional rights, injunctive relief requiring Defendants to provide him with evidence pertaining to his alleged gang involvement, a prison job, transfer to another correctional facility away from the Cumberland region, and compensatory and punitive damages. Compl. 9.[5] He further seeks transfer to a lower security facility where he can learn job skills. *Id.* at 6.

### Defendants' Response

Defendants have filed affidavits and verified exhibits in support of their dispositive motion. On June 21, 2013, Galley responded to an inquiry from Blankumsee's brother, Tressie Smiley, concerning Blankumsee's security level. Jon Galley Decl. 3, ECF No. 13-4. Galley

---

[5] Blankumsee's transfer to WCI and assignment to a prison job arguably render moot aspects of his claims. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (stating that, "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").

attests:

> I did not personally conduct the investigation that determined that inmate Azahiaah Blakiumsee [sic] had prior gang involvement. I relied upon information provide to me by DPSCS [the Maryland Department of Public Safety and Correctional Services] employees familiar with Azahiah [sic] Blankumsee in determining that inmate Blankumsee's security level as determined by the Security Reclassification Instrument was appropriate.

*Id.*

Richard Roderick attests that his duties include responding to communications and administrative remedy procedure (ARP) requests from inmates. Richard Roderick Decl. ¶ 2, ECF No. 13-5. On November 20, 2014, he responded to Blankumsee's "request for job assignments to Dietary." *Id.*

On January 7, 2015, he denied ARP NBCI-3261, in which Blankumsee "claimed he was improperly designated as a member of a security threat group." *Id.* Roderick attests:

> As part of the review process of ARP NBCI-3261-14, Blankumsee's allegations were reviewed by staff and his intelligence file was reviewed. I did not personally conduct the investigation that determined that Blankumsee had prior gang involvement. I relied upon the investigation and information by DPSCS employees familiar with Blankumsee in determining that Blankumsee was a properly validated member of a STG pursuant to DPSCS' policy and procedure. DPSCS policy DCD 245.005, M.1. states that "All jobs and program assignments will be made by case management with the approval of the warden/designee, with due consideration for...security and public safety concerns." Due to security and public safety concerns, Blankumsee was not entitled and was denied a job in dietary based on the information provided to me that he was a validated member of a STG.

*Id.* ¶ 3. On April 2, 2015, Blankumsee filed a grievance with the Inmate Grievance Office (IGO) as an appeal of the ARP decision.   Scott Oakley Decl. ¶ 3, ECF No. 13-3. The IGO administratively dismissed the grievance on April 14, 2015, for failure to properly exhaust the ARP process. *Id.*[6]

---

[6] Defendants seek dismissal of the Complaint based on Blankumsee's failure to exhaust his administrative remedies prior to initiating this case. Defs.' Mem. 11. Blankumsee does not dispute Defendants' affirmative defense or assert

In denying the ARP, Roderick indicated that Blankumsee's STG validation was to be reviewed within the next year to consider whether removal was appropriate at that time. Roderick Decl. 5.   Roderick states that Blankumsee's job assignment history from November 2013 reveals that, from July 24, 2012 through March 5, 2014, Blankumsee was assigned to sanitation; he then was on a job bank wait list until February 23, 2015, when he "was assigned to Parenting Group # 18" through June 23, 2015, at which time he was returned to the job bank wait list. *Id.* ¶ 4.   After Blankumsee's transfer to WCI, his classification was changed to medium security and he was assigned to a job in the dietary department. Tennille Winters Decl., ECF No. 21-1 (Case Manager).

In support of their dispositive motion, Defendants filed two declarations executed by Lt. Jason Harbaugh, supervisor of NBCI intelligence. Harbaugh Decl., ECF No. 13-6; Second Harbaugh Decl., ECF No. 14.[7] Harbaugh attests that Blankumsee "was initially validated as a SGT member in October 2010." Second Harbaugh Decl. ¶ 2. In November of 2013, Blankumsee complained to Harbaugh that "he had never been involved in gang activity." *Id.* Harbaugh reviewed the information and determined that Blankumsee was properly validated. *Id.* A subsequent investigation, after Blankumsee "again claimed to never be involved in gang

---

his compliance with 42 U.S.C. § 1997e(a).  Even if the matter were dismissed on this basis, there are other grounds for dismissal which shall be discussed herein.

[7] On June 25, 2015, Counsel filed a Motion to Seal Harbaugh's Second Declaration, ECF No. 15, which I denied on July 13, 2015 without prejudice to refiling within fourteen days, because the insufficient motion contained only general information that did not make the confidential nature of the declaration apparent, ECF No. 17. Defendants did not renew their motion. On November 4, 2015, Plaintiff filed a Declaration for Entry of Default, claiming that he was entitled to default judgment because Defendants did not file a renewed motion to seal. ECF No. 19. Because Defendants failed to renew their Motion to Seal, the Second Declaration will be unsealed, but that is not basis for default.  Plaintiff's request for an entry of default will be denied.

On November 17, 2015, Blankumsee submitted correspondence requesting a status update and a copy of the complaint. ECF No. 20. Counsel states that on January 8, 2016, a copy of the Harbaugh's Second Declaration, which was labeled and filed as Sealed Exhibit 5, as well as a copy of the Complaint and Supplement were mailed to Blankumsee. Defs.' Supp. 2 n.1, ECF No. 21.

activity," concluded that the STG designation was valid because "information found during a search of inmate Blankumsee's cell indicated he had contacts with current members of a STG. *Id.*

> Harbaugh explains:

> > When an inmate claims that he has been incorrectly labelled as a Security Threat Group (STG) member, a review of the available information is made. If the information is verified, the STG label will remain. If an error is found, the STG label will be removed
> > When an inmate claims that he should no longer be designated a STG, an initial investigation is done by the institutional intelligence lieutenant or his designee at the institution where the inmate is housed. The investigation is done over a period of time to ensure institutional security and that the inmate does not obscure his STG affiliation solely for the renunciation process. If the lieutenant and the Warden or the Warden's designee agrees that the inmate should no longer be validated as an STG, a request for removal from the STG list ... [is] sent to the Intelligence Unit at Headquarters [HQ]. An investigative review is conducted by the HQ Intelligence Unit. If the HQ Intelligence Unit agrees that the STG designation should be removed, the inmate shall be removed from the STG list.

Harbaugh Decl. ¶¶ 3–4. Harbaugh states that Blankumsee "never filed a renunciation request." *Id.* ¶ 6.

> Harbaugh attests that "[t]he STG validation policy and procedure is security sensitive and confidential; therefore, not all steps of the investigation are provided to inmates or to the general staff," because "[p]roviding this information to inmates and the general staff would severally [sic] compromise the process and thwart efforts to investigate, identify, and validate STG members." *Id.* ¶ 5.

## STANDARD OF REVIEW

### Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. I must accept the facts as alleged in Plaintiff's complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). If the documents that the Court considers exceeds this scope, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620, 623 (D. Md. 2013).

### Summary Judgment

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006). In the case of conflicting evidence, such as competing affidavits, summary judgment is generally inappropriate, because the fact-finder's function is to resolve factual disputes, including matters of witness credibility.

## DISCUSSSION

### Personal Participation

Defendants seek dismissal from this case based on their lack of participation in the matters alleged. Defs.' Mem. 12–13.

> Liability is imposed under § 1983 on "any person who shall subject, or cause to be subjected, any person ... to the deprivation of any rights...." 42 U.S.C. § 1983. The statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988).... [A]n individual cannot be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)....

*Oladokun v. Maryland*, No. DKC-14-463, 2014 WL 7014511, at *6 (D. Md. Dec. 10, 2014).

In a § 1983 action, liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to the knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Blankumsee holds Galley culpable because he is "legally responsible for the overall operation" of the Department of Correction, including NBCI. Compl. 1. Blankumsee does not refute Galley's lack of personal involvement in the decision to assign STG status or assert facts

sufficient to confer supervisory liability. Accordingly, Galley will be dismissed from this case. Defendants' defenses as to Roderick and Harbaugh in this regard are unconvincing, as both were involved in assigning or reviewing the STG designation. Neither Roderick nor Harbaugh shall be dismissed for lack of personal participation.

### Sovereign Immunity

Defendants contend they are protected from suit in their official capacities under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101–02 (1984). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Defendants were state employees during the time at issue. *See* Galley Decl. ¶ 1; Roderick Decl. ¶ 1; Second Harbaugh Decl. ¶ 1. Thus, Blankumsee's claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment.

However, Blankumsee's claims for prospective injunctive relief for ongoing unconstitutional conduct (his allegedly improper STG designation) shall not be dismissed based

on Eleventh Amendment immunity. Defendants fail to address this issue. In *Ex parte Young*, 209 U.S. 123 (1908), "[t]he Supreme Court . . . delineated an exception to the application of the Eleventh Amendment" that "'permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment.'" *Bland v. Roberts*, 730 F.3d 368, 389–91 (4th Cir. 2013) (quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010)). The state official remains subject to liability if the plaintiff seeks to enjoin the official from engaging in unconstitutional conduct, alleges that the official's violation is ongoing, and requests only prospective relief. *See id.*

Accordingly, only Blankumsee's claims for monetary damages against Defendants in their official capacities shall be dismissed on the ground of Eleventh Amendment immunity.

## Due Process Claims

Essentially, Blankumsee's complaint is that the STG designation prevents him from earning diminution credits, limits his opportunities to obtain prison jobs, and precludes reclassification and transfer to a lower security correctional facility. Compl.; Pl.'s Supp. This, Blankumsee claims, violates his rights under the Fifth[8] and Fourteenth Amendment. Defendants argue that the Fourteenth Amendment claim should be dismissed because "no liberty interest has been implicated," or alternatively, they are entitled to summary judgment because the undisputed facts show that they did not violate Blankumsee's Fourteenth Amendment Rights. Defs.' Mem. 16.

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of ... liberty ... without due process of law." To succeed on a due process claim, a

---

[8] The due process protection of the Fifth Amendment applies to actions by the federal government. *See, e.g.*, *Schlesinger v. Ballard*, 419 U.S. 498, 500 n.3 (1975). It does not apply here because Defendants are all state actors.

plaintiff must first show the existence of a protected property or liberty interest. *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976); *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Imprisonment is deprivation of a liberty interest, but it is constitutional, provided that the conviction is valid and "the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano,* 427 U.S. 215, 224 (1976), *see also Sandin v. Conner,* 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest). Blankumsee does not challenge his conviction. Rather, he alleges that a condition of his confinement—that is, his purportedly erroneous STG designation—is unconstitutional.

Indeed, prisoners have a limited constitutional right, grounded in the due process clause, "to have prejudicial erroneous information expunged from their prison files," and they are deprived of this right if prison officials refuse to expunge material after being requested to do so. *See Paine v. Baker,* 595 F.2d 197, 202–03 (4th Cir. 1979). However, "it is not sufficient that the inmate disputes evaluations and opinions regarding him"; federal courts will not "second-guess the[se] evaluations." *Id.* The erroneous information must have been relied on "to a constitutionally significant degree" in order to state a claim. *Id.* "If the information is relied on to deny parole or statutory good-time credits, or to revoke probation or parole, the inmate's conditional liberty interest is at stake and the due process clause is called into play." *Id.* at 202 (citing *Wolff v. McDonnell,* 418 U.S. 539 (1974)).

Inmates generally have no liberty interest in obtaining a particular security classification,[9] earning diminution credits, holding a prison job, or transferring to a particular correctional facility. There is no constitutional right for an inmate to be housed in a particular institution, at

---

[9] In *Blankumsee v. Department of Corrections, et al.,* PWG-13-1751, Mem. Op. 6, ECF No. 5, I observed that Blankumsee was being provided regularly scheduled classification review.

particular custody level, or in a particular portion or unit of a correctional institution. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that protected liberty interests are generally limited to freedom from restraint that imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life);*McKune v. Lile,* 536 U.S. 24, 26 (2002) (stating that the "decision where to  house inmates is at the core of prison administrators' expertise"); *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (no constitutional right to a "particular security or custody status"); *Meachum,* 427 U.S. at 225 (holding that the due process clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system").

Generally, lack of opportunity to earn or apply diminution credits is not an atypical and significant hardship implicating due process protections. *Meachum,* 427 U.S. at 225–26; *see Robinson-Bey v. Corcoran*, No. L-00-3452, 2001 WL 34799270, at \*2 (D. Md. Apr. 12, 2011) ("There is no constitutional right to diminution credits."). Furthermore, prisoners do not have a constitutionally protected right to work while detained or incarcerated, to remain in a particular job once assigned, or to earn diminution credits at that job. *See Awalt v. Whalen*, 809 F. Supp. 414, 416–17 (E.D. Va. 1992); *Altizer v. Paderick*, 569 F.2d 812, 812–13 (4th Cir. 1978). Prisoners do not have a constitutional right to access educational or rehabilitative programs absent a showing of significant hardship not evident here. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Bowring v. Godwin*, 551 F.2d 44, 48 n.2 (4th Cir. 1977).

These decisions recognize that the correctional institutions need to maintain order and discipline, and matters of security classification are reserved to the sole discretion of prison officials. *See Slezak*, 21 F.3d at 594; *Sandin*, 515 U.S. at 482 (stating that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile

environment"). The expertise of prison officials in matters of security must be given due deference. *See Sandin*, 515 U.S. at 482.

An inmate's assignment to or removal from an institutional job is a common occurrence in the daily operations of a prison and does not pose atypical and significant hardship. *See Koenig v. Maynard*, No. JFM-12-1088, 2013 WL 4026917, at *3 (D. Md. Aug. 6, 2013) (inmate "has no constitutional right to a prison job" and his "failure to gain a 'preferred' workforce assignment is not an atypical event in the ordinary day-to-day incidents of prison life and cannot be said to have imposed a significant hardship on him"), *aff'd*, 567 F. App'x 179 (4th Cir. 2014). It is a "matter[] of prison administration, within the discretion of the prison administrators," and not "'within reach of the procedural protections of the Due Process Clause.'"*Altizer*, 569 F.2d at 813 (quoting *Meachum*, 427 U.S. at 228–29).

Because Blankumsee cannot show that his STG status caused loss of earned diminution credits or deprivation of a constitutionally protected liberty interest, his claims do not trigger due process. *See Meachum*, 427 U.S. at 225–29; *Sandin*, 515 U.S. at 484; *Altizer*, 569 F.2d at 813. Absent a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).   It bears noting too, that when Blankumsee disputed his STG status, investigations ensured and the results were conveyed to him. Thus, even when the facts are viewed in the light most favorable to Blankumsee, there is no genuine issue of material fact as to whether a constitutional due process violation has occurred, and Defendants are entitled to judgment in their favor as a matter of law.

### Equal Protection and Discrimination

Blankumsee claims that the STG designation subjected him to unlawful discrimination and violated his right to equal protection. Compl. 4. Defendants seek dismissal of the equal protection claims against them based on Blankumsee's failure to state a claim or alternatively, summary judgment on the basis that "DPSCS's policy is [a] rationally based policy to maintain institutional security." Defs.' Mem. 16–17.

In his opposition, Blankumsee summarily names five NBCI inmates who were validated STG members and worked in sanitation jobs. Pl.'s Opp'n 5. One name is incomplete and two inmates have been transferred from NBCI. Blankumsee does not explain how he obtained this information. Nor does he provide it in verified form.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state a cognizable claim for denial of equal protection, a plaintiff must allege discriminatory intent as well as disparate impact. *Irby v. State Bd. of Elections*, 889 F.2d 1352, 1354 (4th Cir. 1989). In other words, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate the has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

Prisoners are not a suspect class. *See Nicholas v. Tucker*, 114 F.3d 17, 20 (2d Cir. 1997). Even assuming that the prisoners named were similarly situated, where neither fundamental rights nor a suspect class is involved, as here, there is no denial of equal protection if the

distinction is rationally related to a legitimate state interest. *Moss v. Clark*, 886 F.2d 686, 690 (1989). DPSCS has an interest in "'security and public safety,'" Roderick Decl. ¶ 3 (citing DPSCS policy DCD 245.005, M.1), and this is a legitimate state interest, *see Stouffer v. Reid*, 965 A.2d 96, 107 (Md. Ct. Spec. App. 2009) ("'The State has a legitimate interest in maintaining . . . effective security within [the prison] system.'" (quoting Epps v. State, 634 A.2d 20 (Md. 1993))). Further, this interest drives "'[a]ll jobs and program assignments,'" which are "'made by case management with the approval of the warden/designee.'" Roderick Decl. ¶ 3 (citing DPSCS policy DCD 245.005, M.1). Indeed, the prison administrators determined that, "[d]ue to security and public safety concerns, Blankumsee was not entitled [to] a job in dietary based on the information provided to me that he was a validated member of a STG," and they denied Blankumsee the job on that basis. Roderick Decl. ¶ 3; *see Neal v. Stouffer*, No. PJM-12-524, 2013 WL 693036, at *4 (D. Md. Feb. 25, 2013) (stating that prisoner work assignments are matters of prison administration within the discretion of the prison administrators (citing *Altizer*, 569 F.2d at 813)). Moreover, apart from Blankumsee's conclusory allegation of prejudice, there is no evidence that Blankumsee's lack of job placement was the result of unlawful discriminatory animus. Consequently, Blankumsee cannot establish discrimination in violation of the equal protection clause, and Defendants are entitled to summary judgment. *See Irby*, 889 F.2d at 1354; *Morrison*, 239 F.3d at 654.

### Eighth Amendment

### 1. Failure to Protect

The Complaint raises claims of failure to protect and unconstitutional conditions of confinement in violation of the Eighth Amendment. Blankumsee claims that his life is in danger in a maximum security facility, and "defendants deliberately places [sic] plaintiff's life in harms

[sic] way by validating him, and vaguely labeling him a gang member, or STG affiliate." Compl. 7; *see also id.* at 3.

In light of the safety concerns expressed in the Complaint, I directed Blankumsee to specify any threats of harm he has received. ECF No. 4. Blankumsee's Supplement failed to provide information concerning specific threats of harm and acknowledged he "was not asserting a claim for mental, physical or emotional injury." Pl.'s Supp. 2. He did not identify any inmates who threatened him or a particular gang with inmates who threatened him. Instead, he claims that he will be "in immediate danger, *if* ever a gang war was to occur." *Id.* at 2 (emphasis added). Blankumsee self-reports feelings of anxiety from the alleged dangers. He states, without documentation, that he was prescribed medication for anxiety by a prison psychiatrist. Pl.'s Supp. 3-4; Pl.'s Opp'n 9.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994).

In a failure to protect claim, a prisoner must show first that the harm he suffered was objectively serious and that prison officials acted with deliberate indifference. *Id.* at 834. Deliberate indifference in the context of a failure to protect claim means that the defendant

"knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Unless a prison official actually makes this inference, he does not act with deliberate indifference even where his actions violate prison regulations or can be described as "stupid" or "lazy." *Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997).

Blankumsee does not allege, much less prove, that he has suffered an objectively serious harm actually caused by his STG designation or security classification. Moreover, he fails to demonstrate that Defendants were aware of and disregarded his anxiety or any excessive risk to his safety. Accordingly, he has failed to state an Eighth Amendment failure to protect claim, and this claim shall be dismissed. *See Farmer*, 511 U.S. at 833, 837.

## 2.   Conditions of Confinement

An inmate may state an Eighth Amendment claim based on the conditions of his confinement. Indeed, the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015) (citing *Farmer*, 511 U.S. at 832). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

To establish a claim for cruel and unusual punishment due to conditions of confinement, a plaintiff must show (1) an objectively serious deprivation of a basic human need causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 298. A plaintiff cannot have been found

to be subjected to unconstitutional confinement conditions unless he can show a serious or significant physical or mental injury as a result of those conditions. *Strickler v. Waters*, 989 F.2d 1375, 1379–81 (4th Cir. 1993). Therefore, 'to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Id.* at 1381; *see Odom v. S.C. Dep't of Corr.*, 349 F. 3d 765, 770 (4th Cir. 2003). To satisfy the second requirement for a conditions of confinement claim, a plaintiff must allege facts sufficient to show that the defendant knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that he drew that inference, and that he disregarded the risk posed. *Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 298.

Blankumsee's claim is deficient in several regards. First, his self-reported claims of emotional distress falls far short of showing that the conditions he describes actually caused him significant or serious mental injury. Further, there is no evidence that Defendants acted with deliberate indifference to Blankumsee's concerns. Locked showers, recreation rooms without windows, and overcrowding (as Blankumsee alleges) in and of themselves are neither atypical nor so severe they amount to deprivation of "minimal civilized measure of life's necessities." *See Rhodes*, 352 U.S. at 347.

Of course, prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, (1995); *Wilkinson v. Austin*, 545 U.S. 209 (2005). As the Fourth Circuit recently noted, "[t]he Supreme Court has long recognized that a prisoner may have a state-created liberty interest in certain prison confinement conditions...." *Prieto v. Clarke*,

780 F.3d 245, 248 (4th Cir. 2015). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily...fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502, 503 (4th Cir. 1997).

There are no factual allegations from which I could infer that Blankumsee's maximum security housing at NBCI imposed an atypical or significant hardship on him in relationship to the ordinary incidents of the prison life of inmates.[10]   Accordingly, there are no genuine issues of material fact presented regarding the constitutionality of Blankumsee's conditions of confinement, and Defendants are entitled to summary judgment. *See Farmer*, 511 U.S. at 837.

## First Amendment

Blankumsee contends in a single sentence that he was denied his "First Amendment Right to Redress." Pl.'s Supp. 3.  He provides no further details to support his claim.  The right of access to the courts is the right to bring to court a grievance, and violation of that right occurs only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  In order to present a claim denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).   As Blankumsee fails to identify any actual injury caused by Defendants, his conclusory and unsupported assertion is insufficient to state a First Amendment claim for denial of access to the courts, and the claim will be dismissed. *See Cochran*, 73 F.3d at 1317.

## Sixth Amendment

Blankumsee claims that he was denied compulsory process in violation of his rights under the Sixth Amendment. The Sixth Amendment provides:

---

[10] The Fourth Circuit uses the general prison population as the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentences. *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015).

> In all *criminal prosecutions*, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

U.S. Const. amend. VI (emphasis added).   As this is a civil, not a criminal proceeding, the protections of the Sixth Amendment are not implicated. *See Turner v. Rogers,* 5634 U.S. 431, 131 S. Ct. 2507, 2516 (2011) (stating that "the Sixth Amendment does not govern civil cases). Accordingly, this claim will be dismissed.

## CONCLUSION

In sum, the claims against Galley are dismissed for lack of personal participation, and the Eleventh Amendment bars the claims for monetary damages against Roderick and Harbaugh in their official capacities.  As for the remaining claims, the First, Fifth, and Sixth Amendment claims, as well as the Eighth Amendment claim for failure to prosecute, are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Additionally, because the undisputed facts show that Blankumsee's liberty interest were not implicated and no constitutional violation occurred, Defendants are granted summary judgment in their favor on the Fourteenth Amendment due process and equal protection claims, as well as the Eighth Amendment conditions of confinement claim. Defendants' dispositive motion, ECF No. 13, is GRANTED. This Court declines to exercise supplemental jurisdiction over the state constitutional claims.  *See* 28 U.S.C. § 1367(c)(3). A separate order follows.

_01/21/16_
Date

_____
Paul W. Grimm
United States District Judge